

ENTERED
02/21/2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| HOUSTON REGIONAL SPORTS § | CASE NO: 13-35998 | |
| NETWORK, L.P. § | | |
|    Debtor(s) § | | |
| § | CHAPTER 11 | |
| § | | |
| **ROBERT E OGLE** § | | |
|    Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 15-3144 | |
| § | | |
| **COMCAST CORPORATION, INC.**, *et al* § | | |
|    Defendant(s) § | | |

## MEMORANDUM OPINION

Robert E. Ogle, as Trustee of the Houston Regional Sports Network Litigation Trust, filed his First Amended Complaint against Comcast Corporation, Inc. *et al* in order to pursue claims for fraudulent misrepresentation, promissory estoppel, and breach of contract extending from Comcast's alleged scheme to acquire Houston Regional Sports Network, L.P.'s assets in bankruptcy. Comcast moved for partial summary judgment on the Trustee's claims.

After the Court granted Comcast's motion in part and denied it in part, the Court ordered the Trustee to file a supplemental response to the remaining portion of Comcast's motion and include, as attachments, matters that could be made into an admissible form at trial that would permit a reasonable factfinder to conclude that the Network incurred provable damages as a result of Comcast's alleged misrepresentations. To meet this burden, the Trustee must demonstrate that he can establish, by a preponderance of the evidence, that the Network would have entered into a more favorable transaction than the one that the Network consummated with

AT&T/DirecTV had it not relied on Comcast's representations that it would make a stalking horse bid for the Network.

Although he filed the supplemental response as required, the Trustee failed to make the required demonstration. Accordingly, the remainder of Comcast's motion for partial summary judgment is granted.

## Background

The Court incorporates all factual, jurisdictional, and constitutional authority findings made within its Memorandum Opinion (ECF No. 34) issued on March 15, 2016, into this Memorandum Opinion.

On May 18, 2017, Robert E. Ogle, as Trustee of the Houston Regional Sports Network Litigation Trust (the "Trustee"), filed his First Amended Complaint against Comcast Corporation, Inc. *et al* ("Comcast"). (ECF No. 91). The Trustee asserts three separate causes of action against Comcast within his Complaint. (ECF No. 91 at 39–45). Under Count 1, the Trustee asserts that, between September 2013 and January 6, 2014, Comcast fraudulently misrepresented that it would make a stalking horse bid on the Network or substantially all of its assets in bankruptcy and in an amount sufficient to satisfy all prepetition claims and administrative expenses in full, as well as a significant amount of the Network's equity claims. (ECF No. 91 at 39). The Trustee also asserts under Count 1 that, between January 6, 2014, and February 4, 2014, Comcast fraudulently misrepresented that it would make a stalking horse bid on the Network or substantially all of its assets in bankruptcy and in an amount sufficient to satisfy all prepetition secured, administrative, priority, and general unsecured claims in full but without an amount returned to equity. (ECF No. 91 at 39).

Of particular note, the Trustee claims that the Network's reliance on Comcast's fraudulent misrepresentations and promises was significantly detrimental. (ECF No. 91 at 41 43). Prior to the Network's bankruptcy, Comcast valued the Network at $500 million. (ECF No. 91 at 41). However, after the involuntary bankruptcy petition against it, the Trustee alleges that:

- the Network's value decreased;

- the Network lost opportunities to reorganize, to sell its assets at a price adequate to satisfy its creditors' claims and provide a distribution to equity holders, or to dissolve; and

- the Network incurred various debts, fees, and expenses, including hundreds of millions of dollars in additional media rights payments to the Houston Astros and Rockets. (ECF No. 91 at 41).

Ultimately, AT&T/DirecTV bought the Network for a significantly lower price than the prices offered by Comcast through its misrepresentations. (ECF No. 91 at 41).

Under Count 2 of his First Amended Complaint, the Trustee asserts a claim for promissory estoppel against Comcast based upon the Network's reliance on Comcast's false representations that it would bid on and purchase the Network in bankruptcy at the stated times and amounts. (ECF No. 91 at 42). Pursuant to its reliance, the Network refrained from contesting or seeking to dismiss the involuntary bankruptcy petition filed against it by Comcast. (ECF No. 91 at 42). The Court consequently entered the Order for Relief in the Network's bankruptcy case, leading to a significant loss in value, a loss of opportunities to reorganize or sell its assets at a fair price, and the lower acquisition price received from AT&T/DirecTV. (ECF No. 91 at 42).

Finally, the Trustee asserts a claim against Comcast for a breach of Section 2.4 of the Comcast Services Agreement as Count 3 of his First Amended Complaint. (ECF No. 91 at 44).

This Agreement, executed on October 29, 2010, provided that a Comcast entity would furnish the Network with management oversight, certain operational services, identification of prospective multi-channel video programming distributors ("MVPDs"), and negotiation of distribution agreements with MVPDs; in return, the Network agreed to pay $5 million annually and reasonable out-of-pocket costs to Comcast. (ECF No. 91 at 44). While the Network fully performed its contractual obligations under the Agreement, the Trustee claims that Comcast intentionally breached Section 2.4 of the Agreement by:

- failing to provide the listed services at the same level and quality that Comcast provided to other Comcast-related regional sports networks;

- improperly basing its allocation of time, personnel, and resources to the Network on the amount and nature of Comcast's ownership interest in the Network; and

- failing to use commercially reasonable efforts to obtain the best pricing, benefits, and other terms for the Network. (ECF No. 91 at 44–45).

Based upon each of these Counts, the Trustee alleges that the Network and the Network's bankruptcy estate suffered actual damages, consequential damages, out-of-pocket damages, and benefit-of-the-bargain damages, amongst other forms of damages. (ECF No. 91 at 41–42, 43, 45).

On July 5, 2017, Comcast filed a motion for partial summary judgment on the Trustee's claims that the Network and the Network's estate detrimentally relied on Comcast's stalking horse representations and promises. (ECF No. 109). Comcast first argues that the Trustee cannot prove detrimental reliance on Comcast's stalking horse representations that allegedly led to the Network's perceived loss of more lucrative third-party deals than the sale it ultimately executed with AT&T/DirecTV because no such alternative deals for the Network or its assets ever existed. (ECF No. 109 at 24–26). Instead, as stated by the Trustee, the Network's market

consisted of a duopoly that included only Comcast and AT&T/DirecTV. (ECF No. 109 at 25; *see* ECF No. 91 at 34).

Comcast next asserts that the Trustee cannot establish detrimental reliance based upon the Network's failure to contest the involuntary bankruptcy petition filed against it by Comcast in reliance on Comcast's abovementioned statements that it would make a stalking horse bid for the Network, resulting in a loss in value of $500 million. (ECF No. 109 at 26–27). Instead, Comcast argues that this theory fails as a matter of law because the Debtor's value would have been no greater had the bankruptcy case been dismissed since the Court found that the Network's bankruptcy filing preserved—rather than destroyed—its remaining value, and because the Network would have incurred its bankruptcy related fees even if it had not relied on Comcast's representations and contested the involuntary petition. (ECF No. 109 at 27–31).

Comcast finally argues that the Trustee cannot establish that the Network detrimentally relied on Comcast's representations under any alternative theory. (ECF No. 109 at 31). For instance, the Network cannot prove that its reliance on Comcast's fraudulent stalking horse representations caused the Network to lose an inchoate opportunity to negotiate a third-party deal for the Network or its assets because such a theory is too speculative. (ECF No. 109 at 33). The First Amended Complaint fails to allege any such alternative deal and instead effectively eliminates the possibility that the Network could have entered into a better deal with any other MVPD based upon the duopolistic nature of the Network's market. (ECF No. 109 at 33–34; *see* ECF No. 91 at 34). Even if the Trustee did prove the loss of third-party sale opportunities because of Comcast's fraudulent representations, such negotiations did not guarantee the emergence of a concrete agreement with a third-party to acquire the Network or its assets.

(ECF No. 109 at 34). Accordingly, the Trustee suffered no actual damages. (ECF No. 109 at 34).

On August 9, 2017, the Court held oral arguments on Comcast's partial motion for summary judgment. After consideration of the parties' briefs and arguments, the Court:

- Granted summary judgment as to the portion of Comcast's motion addressing the Trustee's allegations that Comcast's statements induced the Network not to contest the involuntary petition, and that the filing of the involuntary petition by Comcast against the Network or entry of the Order for Relief caused any harm to the Network;[1]

- Denied summary judgment as to that portion of Comcast's motion addressing the Trustee's theory that Comcast's statements unnecessarily prolonged the bankruptcy and caused the Network to incur fees, expenses, and debt that it would not otherwise have incurred; and

- Ordered the Trustee to file a supplemental response to the remaining portion of Comcast's motion and include, as attachments, matters that could be made into an admissible form at trial that permit a reasonable factfinder to conclude that the Network incurred provable damages as a result of Comcast's alleged misrepresentations; to meet this burden, the Trustee must establish, by a preponderance of the evidence, that the Network would have entered into a more favorable transaction than the one that it consummated with AT&T/DirecTV had it not relied on Comcast's fraudulent statements of intention to make a stalking horse bid for the Network. (ECF No. 136 at 1–2).

The Trustee filed his amended supplemental response on December 11, 2017. (ECF No. 141). The attachments to the Trustee's supplemental response include:

- The deposition transcript of Tad Brown, Houston Rockets CEO, taken on November 7, 2017 (ECF No. 141-2). The Trustee cites to this attachment as proof that:

    o the Network negotiated with potential buyers like AT&T/DirecTV using Comcast's stalking horse bids and representations as a benchmark;

    o Comcast's bid, and the frequency with which Comcast publicly touted that bid, chilled interest in the Network and its assets and prevented the occurrence of a competitive auction;

    o only AT&T/DirecTV remained as serious bidders for the Network at the end of negotiations;

---

[1] This determination follows the Court's prior determination that the Network's involuntary bankruptcy petition operated to preserve the Network's economic value, not destroy it. (*See* Case No. 13-35998, ECF No. 238 at 16).

- o while AT&T/DirecTV made an equivalent offer to Comcast's stalking horse bid for the Network on February 3, 2014, no entity made an offer greater than Comcast's offer;

- o Comcast's 2014 public notice stating that it would not make a bid on the Network chilled the Network's market; and

- o the presence of Comcast's stalking horse representations and bids caused the Network to forgo AT&T/DirecTV's equivalent offer in February 2014. (ECF No. 141-2 at 6–10, 24, 27).

- A May 8, 2014 memorandum from Haynes and Boone, LLP, counsel for the Network, to the Network's Board of Directors (ECF No. 141-3). The Trustee cites to this attachment as proof that:

    - o the Network negotiated with potential buyers like AT&T/DirecTV using Comcast's stalking horse bids and representations as a benchmark;

    - o Comcast's stalking horse bid, and the frequency with which Comcast publicly touted that bid, chilled interest in the Network and its assets and prevented the occurrence of a competitive auction;

    - o only AT&T/DirecTV remained as serious bidders for the Network at the end of negotiations; and

    - o while AT&T/DirecTV made an offer equivalent to Comcast's stalking horse bid for the Network, no entity made an offer better than Comcast's stalking horse bid. (ECF No. 141-3 at 2–5).

- An April 4, 2014 e-mail from Tad Brown to Aaron Slator of AT&T (ECF No. 141-4). The Trustee cites to this attachment as proof of negotiations between the Network and AT&T/DirecTV for the sale of the Network. (ECF No. 141-4).

- A May 29, 2014 e-mail chain between AT&T, the Houston Astros, and the Houston Rockets (ECF No. 141-5). The Trustee cites to this attachment as proof of negotiations between the Network and AT&T/DirecTV regarding terms for a potential sale of the Network and the scheduling of a meeting to discuss those terms. (ECF No. 141-5).

- A May 30, 2014 e-mail chain between AT&T, the Houston Astros, and the Houston Rockets (ECF No. 141-6). The Trustee cites to this attachment as proof of negotiations between the Network and AT&T/DirecTV regarding terms for a potential sale of the Network and the scheduling of a meeting to discuss those terms. (ECF No. 141-6).

- A May 30, 2014 e-mail from Jim Crane, owner and chairman of the Houston Astros, to AT&T (ECF No. 141-7). The Trustee cites to this attachment as proof of negotiations between the Network and AT&T/DirecTV regarding additional terms for a potential sale of the Network. (ECF No. 141-7).

- A group of June 2, 2014 e-mail chains between the Houston Astros, the Houston Rockets, and the Network's counsel (ECF No. 141-8). The Trustee cites to this attachment as proof of negotiations and the exchanging of drafted sale term sheets between the Network and AT&T/DirecTV. (ECF No. 141-8).

- A June 2, 2014 letter from Craig Goldblatt, counsel for Comcast, to counsel for the Houston Astros, the Houston Rockets, and the Network (ECF No. 141-9). This attachment includes a proposed and unsolicited revised term sheet for the sale of the Network to Comcast. (ECF No. 141-9 at 4–10).

- The July 2, 2014 Houston Regional Sports Network Board of Directors Meeting Minutes (ECF No. 141-10). The Trustee cites to this attachment as proof that Comcast was informed that its proposed term sheet included within its June 2, 2014 letter was not confirmable by the Court because it was conditioned on obtaining the consent of the Houston Astros and Houston Rockets, which the teams would not give. (ECF No. 141-10 at 2).

- The Declaration of Jeffrey MacKie-Mason, the Trustee's proffered expert (ECF No. 141-11). The Trustee cites to this attachment as proof that:

    o  the Network failed to ultimately receive the economic value promised to it by Comcast's original stalking horse bid;

    o  Comcast's public repudiation of its stalking horse bid caused AT&T/DirecTV to lower their bid for the Network; and

    o  the Network suffered benefit-of-the-bargain and out-of-pocket damages. (ECF No. 141-11 at 6–12).

- The Deposition Transcript of Jeffrey MacKie-Mason (ECF No. 141-12). Mr. MacKie-Mason reviewed the Trustee's complaint—taking the Trustee's allegations as true—in order to make an assessment of the Network's economic harm caused by Comcast's fraudulent stalking horse bids and representations. (ECF No. 141-12 at 10). The Trustee does not explicitly cite to this attachment within his amended supplemental response.

With the support of these attachments, the Trustee argues that the Network suffered economic harm in the form of lost income because of the Network's reliance on Comcast's fraudulent representations that it would serve as a stalking horse bidder. (ECF No. 141 at 18).

First, the Trustee alleges that the Network was economically damaged because Comcast's fraudulent stalking horse representations and bids prevented a competitive auction process for the Network and its assets from taking place. (ECF No. 141 at 20). Instead, Comcast's stalking horse representations and bids, as well as its repudiation of those bids and representations, chilled the Network's market by driving away potential bidders and caused the Network to forego an equivalent offer made by AT&T/DirecTV in February 2014. (ECF No. 141 at 20; *see* ECF No. 141-2 at 8). The absence of a robust market of bidders consequently provided Comcast with the opportunity to purchase the Network at a much lower value than that it originally offered. (ECF No. 141 at 20).

Second, Comcast's public repudiation of its stalking horse representations and bids caused the Network to lose economic value because it never received the value promised to it as a result of Comcast's renouncement of its stalking horse bid. (ECF No. 141 at 20). Comcast's repudiation also caused a chilling effect on the Network's market, leading to the Network's incurrence of millions of dollars in debt and expenses due to the prolonging of the Network's bankruptcy by the lack of a sale. (ECF No. 141 at 21). Based upon these assertions, the Trustee argues that the Network is entitled to recover direct damages under benefit-of-the-bargain and out-of-pocket theories, as well as consequential damages. (ECF No. 141 at 21–28).

On December 18, 2017, Comcast filed a supplemental reply in support of its motion for partial summary judgment. (ECF No. 147). Comcast argues that the Trustee put forward no evidence to support his claim that, but for Comcast's alleged fraudulent stalking horse representations and bids in 2013 and 2014, the Network more likely than not would have reached a better deal with AT&T/DirecTV or another third-party bidder. (ECF No. 147 at 6, 14). Instead, the Trustee's new evidence offers no opinion as to whether AT&T/DirecTV or any other

entity would have made an equivalent or better offer for the Network than that ultimately received by the Network in the absence of Comcast's statements. (ECF No. 147 at 17–18). Consequently, Comcast argues that the Network is not entitled to any of its requested damages. (ECF No. 147 at 26–30).

The Trustee filed a final response in opposition to Comcast's motion for partial summary judgment on December 22, 2017. (ECF No. 151 at 4). The Trustee claims that the deposition testimony of Tad Brown—in which Brown stated that he declined an equivalent offer to Comcast's fraudulent 2014 stalking horse bid from AT&T/DirecTV in reliance on the presence of that stalking horse bid—provides the proof necessary to meet the Court's order. (ECF No. 134-2 at 8–9; ECF No. 151 at 4–5).

On December 29, 2017, the Court held oral arguments on the remaining portion of Comcast's motion for partial summary judgment. The Court took this matter under advisement on January 25, 2018.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 in adversary proceedings. A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover,

the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof on an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 325. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Id.* at 324. The motion should be granted only if the non-movant cannot produce evidence to support an

essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

As part of its ruling on August 9, 2017, the Court ordered the Trustee to file a supplemental response to the remaining portion of Comcast' motion for partial summary judgment and include, as attachments, evidence that could be made into an admissible form at trial and that permits a reasonable factfinder to conclude that the Network incurred provable damages as a result of Comcast's alleged misrepresentations. (ECF No. 136 at 2). To meet this burden, the Trustee must establish, by a preponderance of the evidence, that the Network would have entered into a more favorable transaction than the one it ultimately executed with AT&T/DirecTV had it not relied on Comcast's statements of its intention to make a stalking horse bid for the Network. (ECF No. 136 at 2).

The Trustee's supplemental responses and evidence fail to carry his burden under the Court's August 9 order. In particular, the Trustee's allegations—uncontested at the summary judgment stage by Comcast—that the Network's market of potential acquirers was duopolistic undermine his case. Accepting the Trustee's arguments as true, the *only* potential buyers of the Network were Comcast and AT&T/DirecTV. (ECF No. 141-12 at 84).

By definition, a duopolistic market consists of only two players. In an auction process (whether through the use of an auctioneer with a gavel or a choreographed negotiation), one duopolistic player's bid is affected solely by the actions of the opposing duopolistic bidder.

Under the Trustee's duopoly theory, the Court will accept as true—for the purposes of summary judgment—that AT&T/DirecTV's offer was dramatically lowered when their only competitor (Comcast) dropped out as a bidder. However, it is equally true that

AT&T/DirecTV's rebuffed offer were only tendered in response to Comcast's allegedly fraudulent offers. Without Comcast's alleged fraud (which the Trustee alleges occurred from the beginning), AT&T/DirecTV would never have made their higher offer.

Because Comcast only received AT&T/DirecTV's higher offer due to Comcast's fraudulent offers, the Trustee cannot prove that any damages were suffered from Comcast's fraud. Had Comcast not entered into the Network's market with its alleged sham bids and representations, the Network would have had only one other realistic buyer—AT&T/DirecTV. As a consequence, economic theory dictates that the Network, with only one suitor, would have been in precisely the same position as if Comcast had never made its offers in the first instance.

Most importantly, no evidence submitted by the Trustee suggests that AT&T/DirecTV would have matched or surpassed Comcast's offers in the absence of Comcast's sham presence in the Network's market.

It is true that the Network could have captured excess value for it or its assets if it had correctly perceived that Comcast was "bluffing" with its higher offers. That perception could have led to the acceptance of AT&T/DirecTV's higher offer. However, that opportunity arose *because* of Comcast's alleged fraud. Rather than causing damage, Comcast's alleged fraud created an opportunity for the Network. The Trustee cannot allege damages from the mere reception of an offer that it failed to accept.

The correct measure of damages is as follows:

The amount that AT&T/DirecTV would have paid without the alleged fraudulent offer by Comcast

Minus

The amount that AT&T/DirecTV actually paid when the allegedly fraudulent offer was withdrawn

Equals

The Network's damages.

Accordingly, the preponderance of the evidence establishes that the Network experienced no provable damages by losing a more favorable transaction than the AT&T/DirecTV deal because of Comcast's alleged fraudulent statements of intention to make a stalking horse bid for the Network.  Instead, the Network actually benefited from Comcast's alleged sham representations and bids in the form of a higher offer from AT&T/DirecTV than a single-suitor market would have allowed.

The remaining portion of Comcast's motion for partial summary judgment is granted.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **February 21, 2018.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE